UNITED STATES DISTRICT COURT
IN THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| Edward Manzano | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | C.A. No. C-05-020 |
| | § | |
| TODCO | § | |
|     Defendant. | § | |

## MEMORANDUM OPINION AND FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff Edward Manzano brought suit against defendant TODCO under Section 905(b) of the Longshore and Harbor Workers' Compensation Act. 33 U.S.C. 901 *et seq.* Specifically, plaintiff sued defendant for the alleged breach of a vessel owner's limited duties of care under the LHWCA, as described by the Supreme Court in *Scindia Steam Navigation Co. v. De Los Santos*, 101 S.Ct. 1614 (1981).

On March 13, 2006, the parties appeared for trial. During the trial, plaintiff abandoned his claim under the first *Scindia* duty (i.e. the "turnover duty"), leaving the two remaining duties (the "active control duty" and the "duty to intervene"). Plaintiff called one witness (by video deposition) and then rested his case. Defendant moved for a judgment as a matter of law. Fed. R. Civ. P. 52(c). The Court granted the motion orally and then by short order (D.E. 42).

*Factual Background*

On July 3, 2004 at approximately six a.m., the workboat M/V James River delivered a FESCO crew to the TODCO 250, a jack-up rig in the Gulf of Mexico. The

TODCO 250 was owned by defendant, who had been hired to drill a well by Explore Enterprises, Inc., the operator of the site. The well was at or near completion and FESCO was hired by Explore Enterprises, Inc. to perform a flow test of the well, a procedure that would last approximately 12 hours. As part of the test, the FESCO crew was going to use a piece of equipment known as a "flare boom."[1] The FESCO crew brought one flare boom out to the rig on the workboat and left one at the dock as a backup.

FESCO Supervisor Jimmy Sanchez was in charge of the FESCO operation. He was an expert at hanging flare booms and had performed over a hundred such operations. Upon arriving on the rig, Sanchez met with the rig's toolpusher (a TODCO employee) to discuss the attachment of the flare boom. Sanchez asked the toolpusher to use the rig's crane to support the boom during the entire length of the flow test. The toolpusher denied access to the crane except during the actual rigging procedure.

The toolpusher showed Sanchez where other crews had attached flare booms in the past. The toolpusher would come and go during the rigging of the boom and was present for the majority of the time. Sanchez asked the toolpusher two additional times to use the crane to hold the rig during the entire flow test and the toolpusher continued to refuse. Except for initially showing Sanchez where past crews had attached flare booms, the

---

[1] A flare boom is a long extension that is attached to the side of a rig, facing away from prevailing winds. Excess gas flows out to the end of the boom where it can be flared a safe distance away from the rig. The flare boom used by the FESCO crew on this particular day was approximately 65' long, 3' wide, and 4' tall and weighed approximately 7500 lbs.

toolpusher did not interfere with the rigging of the flare boom.

Sanchez commenced the operation to attach the flare boom to the rig at the location indicated by the toolpusher.  He directed a TODCO welder to weld a FESCO mounting-plate onto the rig.  Next, he directed TODCO roustabouts to attach the rig's crane to the boom with a four-point sling.  After the boom was secured in the sling, Sanchez directed the TODCO crane operator to lift up the boom from the workboat and stab it onto the mounting-plate.  The main support cables (the upright cables) were mounted into holes in the canister leg[2] using a special piece of FESCO equipment designed for this purpose.  Sanchez then directed that the stabilizing lateral support cables (the side cables) be attached to handrail standposts on either side of the flare boom.[3]

Once the rigging operation was complete, Sanchez ordered the crane operator to "slack off" the crane's support of the boom.  The first time the operator slacked off, the boom shifted a bit to the right.  Sanchez ordered the cables to be adjusted.  The operator slacked off again and the boom remained steady.  Sanchez waited for approximately ten minutes to see if the boom would shift again and it did not.  The boom was visibly off-center, but Sanchez was convinced that it would remain in place for the duration of the

---

[2]The jack-up rig was of a type with "canister legs" as opposed to the variety with triangular-bracing support legs.  Canister-type rig legs do not have as many places to attach supports as the triangular-brace leg variety.  Sometimes the lack of options for attachment can result in booms being hung off-center.

[3]The side cables are mainly used to stabilize the flare boom in high winds.  According to Mr. Sanchez, weather was not a factor during this particular operation.

test.

After the flare boom sat stable for ten minutes, Sanchez ordered the plaintiff, FESCO crew member Edward Manzano, to put on his life jacket and walk out onto the flare boom to unhook the four-point sling from the crane.  After Manzano unhooked the sling, the boom lurched.  Before Manzano could return to the safety of the rig, the boom swung violently to the right and slammed against the side of the rig.  Manzano was flung from the boom and fell into the water, injuring himself.  After the accident it was discovered that one of the side cables had bent and then ripped away the handrail standpost to which it had been attached.

After Manzano was pulled from the water and the wreckage was cleared away, Sanchez and the FESCO crew used the workboat to retrieve the second flare boom from the dock and mounted the boom onto the rig.  The second boom was secured by attaching the side cables to a more secure location below the platform.  The boom was shifted to face in a slightly different direction so that this mooring could be accomplished. Mounted in this manner the second boom was apparently free from the structural instabilities that had affected the first boom mount.  The FESCO crew was able to complete the flow test and leave the rig without further incident.

*Findings of Fact*

After examining the trial testimony and all of the other evidence before it, the Court makes the following findings of fact:

1. Manzano's accident was not caused by a defect, hidden or otherwise, that existed on

the TODCO 250. Although the standpost to which the side cable had been attached was ripped away at its weld-points, but there was no indication that these weld-points were faulty or weak. The standpost was a thick steel bar that was bent to a ninety degree angle before the welds broke. It was the extreme force of the shifting boom that was responsible for the side cable coming undone.

2. No TODCO employee was in charge of the operation to rig the flare boom to the side of the TODCO 250. FESCO Supervisor Jimmy Sanchez was in charge of the operation. Although TODCO employees were involved in the rigging, they were acting under the direction of Mr. Sanchez.

3. TODCO employees had relinquished control of the area where the flare boom was being attached. FESCO employees, led by Mr. Sanchez, had assumed control over the area. Although the TODCO toolpusher showed Mr. Sanchez where crews had rigged flare booms in the past, it was Mr. Sanchez's decision to go forward with mounting the boom in that location.

4. No TODCO employee had knowledge of the dangerous condition of the flare boom prior to the accident. The boom stood without shifting for ten minutes prior to Mr. Manzano's ill-fated trip and this satisfied Mr. Sanchez, who had rigged over a hundred booms during his career, as to the boom's sturdiness. There is no indication that any of the TODCO employees had expertise in rigging flare booms. The FESCO crew members were experts in rigging flare booms and the TODCO employees present on the rig were reasonable in relying on them to rig the boom safely.

*Conclusions of Law*

Based upon its findings of fact, the Court hereby determines that plaintiff has failed to adequately show that TODCO breached either the "active control duty" or the "duty to intervene" owed by a vessel owner to a maritime worker under Section 905(b) of the Longshore & Harbor Workers' Compensation Act, as described by the Supreme Court in *Scindia Steam Navigation Co. v. De Los Santos*, 101 S. Ct. 1614 (1981).  Plaintiff abandoned his claim that defendant breached the "turnover duty" during the trial.

Entered this ____28____ day of _____March_____, 2006.

_____
HAYDEN HEAD
CHIEF JUDGE